IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>DAT TIEN NGUYEN,<br><br>                Defendant. | FINDINGS OF FACT,<br>CONCLUSIONS OF LAW,<br>AND ORDER<br><br><br>Case No.  2:06CR828 DAK |

      This matter is before the court on Defendant Dat Tien Nguyen's Motion to Suppress.  An evidentiary hearing on the motion was held on February 8, 2007.  After briefing by the parties, closing arguments were heard on March 15, 2007.  At both hearings, Defendant was represented by Regis Covey, and the United States was represented by Clint T. Gilmore.  Before closing arguments, the court carefully considered all pleadings, memoranda, and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to this motion.   Now being fully advised, the court renders the following Findings of Fact, Conclusions of Law, and Order.

**FINDINGS OF FACT**

      On August 25, 2006 between 1:00 and 2:00 p.m., Officer Paul Labounty of the West Valley City Police Department was clearing a traffic stop on 3500 South across from the Vui Vui Billiards Club in West Valley City.  From his location, Officer Labounty observed a

male he believed to be Dat Nguyen enter a red Pontiac Vibe.  The vehicle did not have a front license plate.  Dat Nguyen was a person of interest in a recent aggravated assault case involving a firearm.  Using a laptop computer in his patrol car, Officer Labounty ran a license and registration inquiry on the license plate of Mr. Nguyen's vehicle.  The inquiry returned a report of no insurance on file.  Officer Labounty followed the suspect vehicle eastbound on 3500 South as it approached Redwood Road in West Valley City.  Traffic was heavy during that time.  The vehicle made a right turn going southbound on Redwood Road.  Officer Labounty noted that the vehicle had difficulty maintaining its travel lane and began a change of lanes, crossing the lane dividers, before signaling the lane change.  Officer Labounty initiated a traffic stop on the vehicle by activating his overhead emergency lights.

After Mr. Nguyen pulled into a parking stall in a strip mall complex on the east side of Redwood Road,  Officer Labounty was able to visually confirm that the individual he stopped was Mr. Nguyen.  Officer Labounty knew Mr. Nguyen because he had had interactions with Defendant approximately three times prior to this incident.  Defendant has had multiple interactions with law enforcement in the past.

Officer Labounty called for back-up due to the fact that Defendant was a suspect in an aggravated assault case involving a firearm.  Once a back-up officer arrived, Officer Labounty approached Defendant's vehicle from the passenger side.  While approaching the suspect vehicle, Officer Labounty did remove his firearm from its holster, but he kept it pointed down and positioned behind his right hip.  At no time did Officer Labounty ever raise his firearm or point it at Defendant.

After making sure that there were no weapons in Defendant's immediate area, Officer Labounty holstered his firearm and instructed Defendant to exit his vehicle. Officer Labounty's back-up officer, Officer Blair Barfuss, never removed his firearm from its holster. Defendant complied with Officer Labounty's request to exit his vehicle and was placed into custody. There was nothing aggressive about Officer Labounty's demeanor when he placed Defendant into custody.

Prior to placing him into custody, Officer Labounty confirmed that there were active warrants out for Defendant's arrest. After placing Defendant into custody, Officer Labounty explained to Defendant that he had active warrants for his arrest, and Defendant mentioned that he was aware of at least one of the outstanding warrants. Defendant did not appear to be under the influence of any type of controlled substance, and he did not appear to have any trouble understanding anything that was said to him. There was no apparent language barrier. The conversation between Officer Labounty and Defendant was friendly. The interaction was low-key and relaxed.

Officer Labounty then read Defendant his Miranda rights from a card and asked if Defendant understood them. Defendant indicated that he understood his rights. After reading Defendant his Miranda rights, Officer Labounty asked Defendant if he could search his vehicle. Defendant consented to the search. The Miranda admonition and consent to search was given in the presence of Officer Labounty's back-up officer, who witnessed the entire interaction. Officer Barfuss testified that Defendant gave his consent to Officer Labounty to search his car.

Defendant was placed in the back seat of Officer Labounty's patrol car while Officer

Labounty searched Defendant's vehicle.  Officer Labounty's back-up officer stood at the front of Officer Labounty's patrol car watching Defendant while Officer Labounty conducted the search.  At no time did Defendant protest the search or in any way indicate that he wished to withdraw his consent to the search of his vehicle.  No more than ten minutes had transpired between the time that the back-up officer arrived and Officer Labounty completed his search of Defendant's vehicle.  Only the passenger compartment of the vehicle was searched, as the particular model of car driven by Defendant does not have a trunk.

After the search of the vehicle was completed and Defendant was booked into jail for his outstanding warrants, Officer Labounty noticed that the license plate number on Defendant's vehicle came back to a car of a different make and model than the one being driven by Defendant.  Officer Labounty could have impounded the vehicle, but did not because the license plate number on the vehicle came back to an individual with the same last name as Mr. Nguyen who lived at an address where Defendant was known to live.

## CONCLUSIONS OF LAW

Defendant initially argued that the traffic stop was not justified, but he withdrew that argument during the closing argument on this motion, conceding that the stop was lawful.   In any event, the court finds that the stop was lawful.

In addition, the court finds that Officer Labounty's arrest of Defendant was justified based on the outstanding warrants for his arrest.   In the State of Utah a peace officer may make an arrest under the authority of a warrant.  Utah Code Ann. §77-7-2.   In the present case, Officer Labounty verified that Defendant had outstanding warrants for his arrest. Ordinarily, an arrest

warrant provides sufficient justification for a seizure, since it was presumably obtained from a judicial officer based on probable cause.   Officer Labounty informed Defendant of the warrants, and Defendant acknowledged he was aware of at least one of the warrants,  Defendant was subsequently booked into jail.

The search of the car was valid for two independent reasons.  First, it was a search incident to arrest.  The United States Supreme Court has held that when a police officer has made contact with an occupant who is inside a vehicle, and thereafter makes a lawful custodial arrest of that person, he may then search the passenger compartment of the vehicle incident to arrest. *New York v. Belton*, 453 U.S. 454 (1981).   Where an officer has made a lawful arrest of a suspect in an automobile, the officer may seize items of evidence found within the passenger compartment of the vehicle as a part of a search incident to a lawful arrest, even when the suspect is outside of the vehicle and handcuffed. *United States v. McKinnell*, 888 F.2d 669, 672-73 (10th Cir. 1989); *United States v. Cotton*, 751 F.2d 1146, 1148 (10$_{th}$ Cir. 1985); *United States v. Lacey*, 86 F.3d 956, 971 (10th Cir. 1996).

Additionally, Defendant voluntarily consented to the search of the car.   The standard by which to test consent to search is the totality of the circumstances surrounding the consent. *United States v. Price*, 925 F.2d 1268 (10th Cir. 1991); *United States v. Soto*, 988 F.2d 1548 (10th Cir. 1993).  The burden is on the government to establish voluntariness of consent to search by demonstrating that the consent was unequivocal, specific, and freely and intelligently given, and that the consent was not the product of duress or coercion.  *United States v. Orrego-Fernandez*, 78 F.3d 1497 (10th Cir. 1996).  "The Fourth Amendment test for a valid consent is

that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973)).   Whether the defendant knew that he could refuse consent, and whether he was free to leave, may be factors in determining voluntariness, but they are not dispositive factors.  *See*, *e.g.*, *Schneckloth*, 412 U.S. at 249-50; *Robinette*, 519 U.S. at 39.  Indeed, a valid consent to search may be given by a person who is being detained.  *Thornton v. United States*, 541 U.S. 615 (2004); *United States v. McRae*, 81 F.3d 1528 (10th Cir. 1996); *United States v. Soto*, 988 F.2d 1548 (10th Cir. 1993).

In the present case, there is ample evidence to support the determination that Defendant voluntarily consented to the search.  Both officers present at the scene credibly testified that Defendant voluntarily consented to the search, and there was no evidence to the contrary.  Officer Labouty read Defendant his Miranda rights.  Defendant has had multiple encounters with law enforcement.  In fact, Defendant has had multiple encounters with the particular officer to whom he granted the consent to search.  The officer spoke in a low-key manner with a relaxed tone.  There is no evidence of any threats or intimidation, nor is there any evidence that the officer's demeanor was aggressive.  According to all the testimony, the exchange between Defendant and Officer Labouty was friendly and conversational.  The request and search were conducted adjacent to a public road during daylight hours.  At no time did Defendant act opposed to the search, before, during, or after the search was concluded.  The government, therefore, has met its burden in presenting "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given" and that "consent was given without duress or coercion." *United*

*States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998) (citations omitted).

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress [docket # # 14, 23] is DENIED.

DATED this 23rd day of March, 2007.

> BY THE COURT:
>
> _____
> DALE A. KIMBALL
> United States District Judge